25CA1232 Peo in Interest of PG 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1232
Pueblo County District Court No. 23MH8
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of P.G.,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    P.G. appeals the district court's order authorizing involuntary administration of his medication. We affirm the order.

## I.    Background

¶ 2    P.G. has been diagnosed with schizophrenia. Previously, the district court had granted an extension of P.G.'s long-term care and treatment at Health Solutions, a designated facility of the Colorado Behavioral Health Administration. Then recently, at the request of Health Solutions staff psychiatrist Arlene Shanklin, M.D., the People filed a petition seeking authorization to involuntarily administer Invega Sustenna (an antipsychotic medication) to P.G.

¶ 3    The district court held an evidentiary hearing on the petition. Dr. Shanklin, who the parties stipulated was an expert in the field of clinical psychiatry, testified for the People; P.G. testified on his own behalf. The court found Dr. Shanklin's testimony credible and persuasive and adopted her opinions. The court further found that the People had proved the necessary elements for the involuntary administration of medication under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and issued an order authorizing Health Solutions staff to administer Invega Sustenna to P.G. against his will.

## II. Analysis

### A. Legal Principles and Standard of Review

¶ 4      A person who is involuntarily committed retains the right to refuse treatment. *See id.* at 971. Even so, a district court may authorize the involuntary administration of medication if the People establish each of the following elements by clear and convincing evidence: (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. *Id.* at 973.

¶ 5      In a sufficiency challenge, we review whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the physician seeking to

administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30.

¶ 6 Application of the *Medina* test is a mixed question of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they are supported by the record but review the court's legal conclusions de novo. *Id.* Both the resolution of testimonial conflicts and the determination of witness credibility are solely within the province of the fact finder. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. When the evidence supports the district court's findings and conclusions, we will not substitute our judgment for that of the district court. *See People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

### B. Significant and Likely Long-Term Deterioration

¶ 7 P.G. does not contest the district court's determination of the first, third, or fourth elements of the *Medina* test. He contends only that the evidence presented at the hearing was insufficient to prove the second element. We disagree.

¶ 8 As noted, under the second *Medina* element, a court must determine, by clear and convincing evidence, that the proposed treatment is necessary either to prevent (1) a significant and likely

long-term deterioration in the patient's mental condition or (2) the likelihood of the patient causing serious harm to himself or others. *Medina*, 705 P.2d at 973. These are "alternative factors." *Id.* In considering the first, the court focuses on "the nature and gravity of the patient's illness, the extent to which the medication is essential to effective treatment, the prognosis without the medication, and whether the failure to medicate will be more harmful to the patient than any risks posed by the medication." *Id.* The second alternative considers whether, without the proposed treatment, the patient will likely constitute a continuing and significant threat to the safety of himself or others. *Id.* at 973-74.

¶ 9   The court determined that the People had proved both factors. In considering the first alternative, the court found that, without Invega Sustenna, P.G.'s prognosis was poor. In particular, the court found credible Dr. Shanklin's testimony that if P.G. stops taking the medication, his mental health will decompensate within a few weeks to a month, when the medication leaves his system. The court also found that, at that time, he will show symptoms of his illness, including hallucinations, delusions, a decrease in wanting to move forward with or improve his life, and a decrease in

4

self-care.  And the court found that, without the medication, P.G. will likely return to illicit drug use, which will cause additional decompensation.

¶ 10     We defer to the district court's determination that Dr. Shanklin was a credible and persuasive witness.  *See Marquardt*, ¶ 8.  Dr. Shanklin described the severity of P.G.'s illness and opined that if he does not take the requested medication, there would be a significant and likely long-term deterioration of his mental condition.  She described P.G.'s demonstrable improvement while on a consistent Invega Sustenna regimen, including a significant decrease in psychotic symptoms, hallucinations, and delusions, and an increase in his ability to engage with his treatment team. She noted, however, that his improvement does not mean that P.G. is cured and the medication is no longer needed; instead, schizophrenia requires ongoing treatment to maintain stability.  She opined that, upon ceasing medication, P.G.'s condition would deteriorate in precisely the ways the court found.  And she testified that the failure to medicate him would be more harmful than the risks posed by the requested medication.

¶ 11    This record supports the district court's determination that the requested treatment is necessary to prevent a significant and likely long-term deterioration in P.G.'s mental condition.

¶ 12    Nonetheless, P.G. asserts that the court's analysis "boils down to a finding that the [requested] medication has been effective" and "leaves no room for [him] to ever be free from court-ordered medication." We disagree with this premise. For starters, the effectiveness of the medication is indeed a part of the court's inquiry into the second *Medina* element. *See Medina*, 705 P.2d at 973. Moreover, Dr. Shanklin's testimony, which the district court credited on this point, demonstrates that ongoing treatment will be required for P.G. to maintain a stable mental condition. And P.G. testified that, without a court order, he would stop taking the Invega Sustenna. Thus, whether P.G. requires court-ordered medication in the future will depend on the course of his treatment, the efficacy of that treatment, his choices, and the other attendant circumstances at that time.

¶ 13    Having concluded that sufficient evidence supports the court's finding as to the deterioration factor of *Medina*'s second element, and because the second *Medina* element is phrased in the

disjunctive, we need not reach P.G.'s contention that the court also erred by finding medication is necessary to prevent the likelihood of P.G. causing serious harm to himself. *See id.*; *see also Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) ("[T]he disjunctive use of the word 'or' marks distinctive categories.").

### III.   Disposition

The order is affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.